UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARK PAYNE                                                                                                    PLAINTIFF

v.                                             No: 2:22-cv-2113

FREEMAN TRANSIT, LLC and
CHRISTOPHER FREEMAN                                                                             DEFENDANTS

**OPINION AND ORDER**

This matter came before the Court on November 7, 2023 for a one-day bench trial on Plaintiff Mark Payne's complaint (Doc. 2) against Defendants Freeman Transit, LLC and Christopher Freeman. The trial only concerned Mr. Payne's claims against Mr. Freeman individually, as the case is stayed against Freeman Transit, LLC because of an ongoing bankruptcy case. (Doc. 36). Mr. Payne seeks damages under the Fair Labor Standards Act ("FLSA") for unpaid overtime compensation.[1]

At trial, the parties stipulated to certain exhibits which were received into evidence. *See* Doc. 41-1. The Court also heard live testimony from five witnesses: Mark Payne, Christopher Freeman, Freeman Transit employee Jack Turner, Freeman Transit employee Mike Norman, and Freeman Transit Vice President Heath Wood. At the conclusion of the trial, the Court took the case under submission.

Following a bench trial, "the court must find the facts specially and state its conclusions of law separately. The findings and conclusions . . . may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1). However, "[t]he trial court need not make

---

[1] In pre-trial briefing, Mr. Payne referred to both the FLSA and Arkansas Minimum Wage Act ("AMWA"). However, Mr. Payne's complaint only included an FLSA claim. *See* Doc. 2. In any event, the FLSA and AMWA claims would be evaluated in the same manner. *Carlton v. JHook Invs., Inc.*, 2019 WL 4784801, at *11 (E.D. Ark. Sept. 30, 2019).

1

specific findings on all facts and evidentiary matters brought before it, but need find only the ultimate facts necessary to reach a decision in the case." *U.S. ex rel. R.W. Vaught Co. v. F.D. Rich Co.*, 439 F.2d 895, 899 (8th Cir. 1971).  Findings are adequate so long as they "afford a reviewing court a clear understanding of the basis of the trial court's decision." *Allied Van Lines, Inc. v. Small Bus. Admin.*, 667 F.2d 751, 753 (8th Cir. 1982) (internal quotation marks omitted). Accordingly, having considered the testimony of the witnesses and the exhibits received into evidence, and having made credibility determinations on the evidence, the Court makes the following findings of fact and conclusions of law.

**I. Liability**

**A. Findings of Fact**

This case arises out of a claim for unpaid overtime wages.  Plaintiff Mark Payne worked at Freeman Transit from April 17, 2017 until March 1, 2022.  Freeman Transit is a trucking company that uses nonrefrigerated 53-foot box trucks to haul dry goods, such as paper products and cleaning supplies.  25 to 30 people work at Freeman Transit, of which about 16 to 17 are drivers.  Of those workers, only two are independent contractors.  Defendant Christopher Freeman is the President of Freeman Transit.  Heath Wood is the Vice President.

Mr. Payne received his first job at Freeman Transit from Mr. Freeman.  Mr. Freeman and Mr. Payne previously worked together at Dancor Transit.  When Mr. Freeman started Freeman Transit in 2017, he approached Mr. Payne about being one of the new company's first drivers.  There was no formal interview.  Instead, the two men discussed the position in the parking lot of their previous employer.  Mr. Freeman offered Mr. Payne the driving position, and Mr. Payne accepted.

In 2018, Mr. Payne had an accident that affected his vision, so he was no longer able to drive outside his home state of Kentucky. To keep him at the company, Mr. Freeman asked Mr. Payne if he would like to transition to a new role in the company. This role did not exist before Mr. Payne filled it. Mr. Freeman envisioned the new role would include Mr. Payne fielding calls from drivers when they had breakdowns on the road. On those calls, Mr. Payne would help the driver assess what was needed to get the truck back on the road. Mr. Payne would correspond with repair shops, manage invoices, and pay those invoices. Mr. Freeman considered Mr. Payne an excellent fit for this role because of his extensive driving experience. Mr. Payne was expected to answer these breakdown calls at any time, even after hours and on weekends. On top of handling the breakdown calls, Mr. Payne would also help with recruiting. The role did not have an official title, but Mr. Payne dubbed himself the Director of Maintenance. Mr. Payne accepted this job, and he began in August 2018.

When discussing the job, Mr. Freeman and Mr. Payne briefly discussed both pay and whether Mr. Payne would be an independent contractor or an employee. Regarding pay, Mr. Freeman asked Mr. Payne how much he wanted to earn. Mr. Payne said he did not know as he had never done a job like this before, so he left it up to Mr. Freeman. Mr. Freeman decided to pay Mr. Payne $750 a week as a flat rate, and Mr. Payne agreed that was a fair rate. Mr. Payne's rate later increased to $850 and then $950 a week. (Pl. Ex. 9, Bates no. -097 to -101). Regarding employment status, Mr. Freeman and Mr. Payne briefly discussed how to classify Mr. Payne. As a driver, Mr. Payne was an independent contractor. Text messages show that Mr. Payne said if he did Department of Transportation audits, he would need to be an employee, but if he did not do audits, he could be a contractor. (Pl. Ex. 1, Bates no. -066). According to Mr. Freeman, Mr. Payne preferred staying an independent contractor because he did not need health insurance and could

3

save money on taxes as an independent contractor. In the end, the decision was left to Mr. Freeman. Mr. Freeman classified Mr. Payne as an independent contractor.

Once in the role, Mr. Payne's job duties changed over time. For clarity, the Court will divide Mr. Payne's job duties into four categories: (1) breakdown calls, (2) scheduled maintenance, (3) recruitment, and (4) e-log training. In addition to breakdown calls and recruitment discussed above, Mr. Payne also managed scheduled maintenance. This scheduled maintenance is periodic maintenance on the trucks, similar to a 5,000 mile suggested oil change on a car. The e-log training occurred with new drivers. E-logs, or electronic logging systems, are systems plugged into trucks that measure driving and on-time hours to ensure compliance with regulations. As a previous driver, Mr. Payne was a good resource for new drivers and helped the new drivers set up their e-log systems in orientation.

Mr. Payne's duties changed, however, as he progressed in his role. Even though Mr. Freeman envisioned Mr. Payne doing recruiting, that responsibility was taken off Mr. Payne's plate early on in his new role. Mr. Freeman explained he felt Mr. Payne was not actually recruiting. Mr. Freeman felt Mr. Payne was merely texting his friends to come drive for Freeman Transit and calling it recruiting. Mr. Freeman explained no drivers came to Freeman Transit because of Mr. Payne's efforts. So Mr. Freeman took away the recruiting responsibility.

Mr. Freeman also took an active role in managing Mr. Payne. As Freeman Transit increased the number of trucks it had on the road, Mr. Payne complained about his workload. After Mr. Payne complained about his hours, Mr. Freeman flew Mr. Payne to Freeman Transit's Arkansas location to observe him. During that observation, Mr. Freeman watched how Mr. Payne worked. Mr. Payne took about three phone calls a day during the three-day observation. Mr.

Payne was able to do his work solely from his laptop and cell phone. After the observation, Mr. Freeman decided to take more duties off Mr. Payne's plate.

Mr. Freeman and Heath Wood, Freeman Transit's VP, worked with Mr. Payne whenever he complained about his work hours. They allowed Mr. Payne to take one weekend off a month, with other employees covering the breakdown calls. Mr. Payne also had one week's paid vacation every year. Mr. Freeman had to cover for Mr. Payne when he was out. Mr. Freeman testified that in a two-week period while he covered for Mr. Payne, he only received twelve breakdown calls total. Eventually, in early 2022, Freeman Transit, Mr. Freeman, and Mr. Wood took the scheduled maintenance off Mr. Payne's plate. Of the four categories listed above, Mr. Payne was only fielding breakdown calls by the end of his time with Freeman transit.

Mr. Payne says his duties never changed, but that is not credible. Other Freeman Transit employees testified that they covered some weekends for breakdown calls, one saying he had covered since September 2021, seven months before Mr. Payne was fired. Also, Freeman Transit transitioned their scheduled maintenance into an in-house shop starting in 2022, which meant Mr. Payne would no longer do scheduled maintenance. The Court finds that Mr. Freeman reduced Mr. Payne's duties over time. Eventually, Mr. Freeman decided to terminate Mr. Payne's employment because of Mr. Payne's poor performance.

### B. Conclusions of Law

This case involves two questions of law related to liability. First, is Mr. Freeman an employer under the FLSA? Second, is Mr. Payne an employee or an independent contractor? If the answer to both questions is yes, then the Court can move on to damages issues. As explained below, the Court answers the questions as follows: Mr. Freeman is an employer, and Mr. Payne is an employee.

### 1. Mr. Freeman is an employer under the FLSA.

The first question to answer is whether Mr. Freeman is an employer under the FLSA. The FLSA defines "employer," as relevant here, as any "person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). A "person" can be an individual. *Id.* § 203(a). The Court cannot find an Eighth Circuit case that discusses a test for determining if an individual is an employer. The closest the Court can find is a discussion of what is necessary to plead that a defendant is an employer. *See Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015). In that case, the Eighth Circuit affirmed dismissal of a plaintiff's complaint because it did "not include any facts describing the 'economic reality' of their employment, such as their alleged employers' right to control the nature and quality of their work, the employers' right to hire or fire, or the source of compensation for their work." *Id.* These factors largely overlap with a four-factor test adopted by district courts in this circuit, which this Court will use. *See, e.g.*, *Childress v. Ozark Delivery of Mo. L.L.C.*, 95 F. Supp. 3d 1130, 1139 (W.D. Mo. 2015); *Travis v. Banks*, 2022 WL 1697717, at *4 (W.D. Ark. May 3, 2022). To determine if Mr. Freeman is an employer under the FLSA, the Court will consider:

> (1) whether the alleged employer had the power to hire and fire the plaintiff; (2) whether the alleged employer supervised and controlled plaintiff's work schedules or conditions of employment; (3) whether the alleged employer determined the rate and method of payment; and (4) whether the alleged employer maintained plaintiff's employment records.

*Childress*, 95 F. Supp. 3d at 1139 (citing *McClean v. Health Sys., Inc.*, 2011 WL 2650272, at *2 (W.D. Mo. July 6, 2011)).

After applying these factors, the Court concludes that Mr. Freeman is an employer under the FLSA. The first factor indicates Mr. Freeman is an employer because he testified that he both hired and fired Mr. Payne. Mr. Freeman also controlled, at least in part, Mr. Payne's schedule

6

because Mr. Freeman arranged for Mr. Payne to travel to Fort Smith for observation. Mr. Freeman also assigned and changed Mr. Payne's job duties. Based on those facts, the second factor also indicates Mr. Freeman is an employer. The third factor also indicates Mr. Freeman is an employer because he determined the method and rate of pay: between $750 and $950 on a weekly basis. Finally, the fourth factor weighs against concluding Mr. Freeman is an employer because he did not keep Mr. Payne's employment records.

Overall, three out of four factors indicates that Mr. Freeman is an employer under the FLSA. Based on this, the Court concludes that Mr. Freeman is an employer under the FLSA.

### 2. Mr. Payne is an employee under the FLSA.

The next question is whether Mr. Payne was an employee or an independent contractor. The FLSA unhelpfully defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). It further defines employ as "to suffer or permit to work." *Id.* § 203(g). This definition is broad. *Walsh v. Alpha & Omega USA, Inc.*, 39 F.4th 1078, 1082 (8th Cir. 2022). The Eighth Circuit has "assume[d] without deciding that the economic realities test is appropriate in determining whether a worker is an employee or independent contractor under the FLSA." *Id.* Therefore, the Court will use the economic realities test to guide its analysis.

The economic realities test consists of six factors:

> (1) "the degree of control exercised by the alleged employer over the business operations;" (2) "the relative investments of the alleged employer and employee;" (3) "the degree to which the alleged employee's opportunity for profit and loss is determined by the employer;" (4) "the skill and initiative required in performing the job;" (5) "the permanency of the relationship;" and (6) "the degree to which the alleged employee's tasks are integral to the employer's business."

*Id.* (quoting *Karlson v. Action Process Serv. & Priv. Investigations, LLC*, 860 F.3d 1089, 1093 (8th Cir. 2017)). The question of whether Mr. Payne is an employee is one of law, but the legal determination involves questions of fact. *Id.* The Court will proceed factor by factor.

7

The first factor indicates Mr. Payne is an employee. This factor "considers the alleged employer's right to control the way work is performed." *Walsh*, 39 F.4th at 1083. Mr. Freeman set Mr. Payne's job duties and he later reduced those duties to accommodate Mr. Payne. Mr. Freeman also set up the accounts with various repair shops and other companies that Mr. Freeman could use when managing breakdown calls. Mr. Payne could approve paying for repair services up to a certain dollar amount, but Mr. Freeman had to approve any large expenses. Mr. Freeman also flew Mr. Payne to Fort Smith for observation when he was concerned with Mr. Payne's complaints about too much work. At trial, Mr. Freeman emphasized that Mr. Payne took on a lot of extra work himself: he set up his own office number and paid for his own software program. Mr. Freeman also emphasized that there was no set schedule for Mr. Payne: Mr. Payne just had to be available for the breakdown calls whenever they occurred. However, even if Mr. Payne had some control over his schedule, the testimony at trial established that Mr. Freeman exerted control over the way Mr. Payne performed work, so this favors concluding Mr. Payne is an employee.

Next, the relative investments in the business by Mr. Payne and Mr. Freeman favors employee status. When evaluating relative investments in the business, "the relevant 'investment' is 'the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself.'" *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1236 (10th Cir. 2018) (quotation omitted).[2] Here, Mr. Payne's investments were negligible. True, he may have invested in an office phone, laptop, and online software program to help him with his duties. But Mr. Freeman owned the company and paid for a Dropbox account that Mr. Payne was

---

[2] The Court finds this Tenth Circuit opinion persuasive because the Eighth Circuit has cited to the *Paragon Contractors* case for its discussion of the economic realities factors. See *Walsh*, 39 F.4th at 1084–85.

8

required to use to submit invoices. Therefore, this factor supports concluding Mr. Payne is an employee.

The third factor also favors employee status. The Eighth Circuit explained that if "a worker can use his managerial skill to improve his efficiency such that he can complete more jobs," then those facts "weigh in favor of independent contractor status." *Walsh*, 39 F.4th 1084 (cleaned up). Here, Mr. Payne only had one role at Freeman Transit. He could not complete more jobs by being more efficient. He was also paid the same amount on a weekly basis no matter how many breakdown calls he took. Mr. Payne could not use his skill to complete more jobs, so this factor favors concluding he is an employee.

The fourth factor slightly favors independent contractor status. This factor concerns the skill and initiative required to perform this job. Mr. Freeman hired Mr. Payne for this job because he believed hiring a former driver to handle breakdown calls would be beneficial for the company. Mr. Payne had years of experience as a truck driver, so his experience was part of the reason for his hiring. Also, Mr. Payne had more experience with e-logs than Mr. Freeman, so that also shows Mr. Payne's specialized skills. Based on his previous experience as a truck driver, Mr. Payne's skillset favors independent contractor status.

The fifth factor—permanency of the relationship—favors employee status. Mr. Freeman hired Mr. Payne as a truck driver in early 2017 with no mention of an end date. Mr. Freeman then transitioned Mr. Payne to the new role with, again, no mention of an end date. The only reason Mr. Freeman fired Mr. Payne was because of performance. This relationship was permanent. Therefore, this factor favors employee status.

Finally, Mr. Payne's job duties were integral to Mr. Freeman's business, so this sixth factor favors employee status. "This factor turns 'on whether workers' services are a necessary

9

component of the business.'" *Walsh*, 39 F.4th at 1085 (quoting *Paragon Contractors*, 884 F.3d at 1237). Mr. Freeman owns a trucking business, and at the time he was working, Mr. Payne was the sole employee managing maintenance for those trucks. Mr. Payne's role was especially integral because he was expected to answer breakdown calls after hours. The purpose of Mr. Payne's role was to get the trucks fixed as quickly as possible so the trucks could safely return to the roads. Other than the truck drivers themselves, the Court can hardly think of a more integral person to the operations of the company. Moreover, the scheduled maintenance portion of Mr. Payne's job was so integral to the company that Mr. Freeman eventually decided to have the company start its own shop to do scheduled maintenance. This all shows that Mr. Payne's duties were integral to the company.

Based on the foregoing analysis, all but one of the six economic realities factors favors concluding Mr. Payne is an employer. While Mr. Payne may have had some flexibility with his work schedule, he was expected to answer any and all breakdown calls whenever they occurred. Additionally, he was not able to increase his profit by being more efficient. Mr. Freeman exercised control over the way Mr. Payne did his work. Lastly, the relationship between the parties featured two other hallmarks of employee status: permanency and being integral to the employer's business. In sum, the Court concludes that Mr. Payne was an employee under the FLSA.

**II. Damages**

"The FLSA prohibits the employment of any person 'for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'" *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (quoting 29 U.S.C. § 207(a)(1)). Having concluded that Mr. Payne is an employee, the next question is what damages

he can recover for unpaid overtime compensation. To determine that ultimate question, the Court makes the following findings of fact and conclusions of law.

### A. Statute of Limitations

The FLSA contains a two-year statute of limitations unless a cause of action arises out of a willful violation of the FLSA. 29 U.S.C. § 255(a). In the case of a willful violation, the statute of limitations is three years. Mr. Payne did not show that Mr. Freeman willfully violated the FLSA. "[A] 'willful' violation [is] one where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2000) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). There is no evidence in the record that Mr. Freeman knew he was violating the FLSA or indicating he showed reckless disregard for whether the FLSA prohibited his actions.

Mr. Freeman testified that he researched the difference between independent contractors and employees, he relied in part on Mr. Payne's research into the issue, and he honestly believed Mr. Payne was properly classified an independent contractor. Mr. Payne failed to otherwise show that Mr. Payne willfully violated the FLSA. Therefore, the Court concludes that Mr. Freeman did not willfully violate the FLSA, and the appropriate statute of limitations is two years. Mr. Payne filed this suit on July 19, 2022, so any claims for damages before July 19, 2020 are barred.

### B. Amount of Damages

The parties dispute whether Mr. Payne has satisfied his burden to prove Mr. Payne was not paid overtime compensation. Mr. Payne argues the Court should apply the *Anderson v. Mt. Clemens* burden-shifting framework. The Court agrees, so it will apply the framework here.

Generally, "an employee who sues for unpaid overtime "has the burden of proving that he performed work for which he was not properly compensated." *Holaway*, 771 F.3d at 1059 (quoting

11

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), superseded by statute on other grounds). And generally, an employer is supposed to keep records of its employees' wages and hours. *Id.* (citing 29 U.S.C. § 211(c)). When an employer fails to keep such records, the employees are not denied recovery. *Id.* "Rather, 'employees are to be awarded compensation based on the most accurate basis possible." *Id.* (quoting *Dole v. Tony & Susan Alamo Found.*, 915 F.2d 349, 351 (8th Cir. 1990)). To accomplish this, courts use the *Mt. Clemens* burden-shifting framework.

Under the *Mt. Clemens* framework, "once the employee has shown work performed for which the employee was not compensated, and 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,' the burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference." *Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013) (quoting *Mt. Clemens*, 328 U.S. at 687–88). This is a relaxed standard of proof for employees. *Holaway*, 771 F.3d at 1059. The relaxed standard accomplishes the goal of not denying a plaintiff recovery when their employee does not keep records. That is the case here, with Mr. Freeman not keeping records because he believed Mr. Payne was an independent contractor not subject to the FLSA. As the Eighth Circuit recognizes, however, *Mt. Clemens* only applies "where the existence of damages is certain . . . [it] allows uncertainty only for the amount of damages." *Carmody*, 713 F.3d at 406.

Mr. Payne has clearly satisfied this standard. Mr. Payne testified that he worked more than 40 hours a work, and he supplemented that testimony with his hours as recorded on TimeCardCalculator.net. *See* Pl. Ex. 8. In that document, Mr. Payne claims he regularly worked between 30 and 50 hours of overtime. On one occasion, Mr. Payne's timecards indicated he worked over 60 hours of overtime. *Id.* at Bates no. -136. Mr. Payne explained that he had to be

available 24 hours a day to respond to breakdown calls. These calls occurred well into the evening and on weekends. Additionally, he worked during the day on his other responsibilities, such as scheduled maintenance and submitting invoices. Both Mr. Freeman and Mr. Wood testified that Mr. Payne did not have set work hours during the day. While they may be correct in that there was no written schedule, they certainly expected Mr. Payne to work during the day. The record contains many examples of Mr. Freeman or Mr. Wood reaching out to Mr. Payne during the day related to his job. *See, e.g.*, Pl. Ex. 3, Bates no. -082; Pl. Ex. 4, Bates no. -043; Pl. Ex. 5, Bates no. -046. Based on these facts, the Court concludes that Mr. Payne has raised a just and reasonable inference that he worked overtime. The burden now shifts to Mr. Freeman.

Mr. Freeman disputes the inference in two ways. First, he offers testimony contradicting Mr. Payne's description of how long it takes to do his job duties. Second, he offers a record of hours that Mr. Payne submitted to OSHA which directly contradicts his TimeCardCalculator.net time sheets. *See* Def. Ex. 1. In addition to Mr. Freeman, two Freeman Transit employees disputed Mr. Payne's account of how long it took to perform breakdown calls. Jack Turner and Mike Norman testified that they have covered breakdown calls for Mr. Payne on weekends. They estimated receiving between zero and two calls a weekend. Mr. Norman said it took a couple of hours to fully resolve a breakdown call. This testimony is consistent with Mr. Freeman's description of when he covered for Mr. Payne. Mr. Freeman testified he took about twelve calls over two weeks, but he said each call only took 15 minutes to resolve. Together, these three individuals negate the inference that Mr. Payne worked as much overtime as he claimed.

Mr. Freeman also negates Mr. Payne's inference of overtime by offering contradictory records of Mr. Payne's hours. The Court received into evidence two exhibits concerning Mr. Payne's hours. Mr. Payne offered his hours from TimeCardCalculator.net. (Pl. Ex. 8). Mr.

Freeman, on the other hand, offered contradictory evidence in the form of hours Mr. Payne submitted as part of an OSHA complaint he filed after being fired. (Def. Ex. 1). On both documents, Mr. Payne's hours regularly claim he worked between 30 and 50 hours of overtime. Mr. Payne testified that he prepared both documents. The two documents contain many inconsistencies. Both documents purport to list Mr. Payne's hours worked on a weekly basis. The Court has identified 57 weeks that overlap on those documents. Of those 57 weeks, Mr. Payne entered different amounts of overtime 56 times. On average, Mr. Payne's hours on the two documents were mismatched by over eight hours a week. Sometimes the hours in the timecards were longer; sometimes the hours in the OSHA complaint were longer. The smallest difference was less than an hour; the largest, 35 hours. In short, the documents were wildly inconsistent even though Mr. Payne prepared both documents.

      Mr. Payne's description of why the documents were inconsistent was simply not credible. Mr. Payne first testified the hours submitted to OSHA were just something he jotted down, but they were not timesheets. Then, Mr. Payne said the OSHA hours were reduced time due to leaving off some calls made. When pressed directly about the discrepancy, Mr. Payne testified he thought he may have underestimated a day or two where he put 15 minutes for a call and not the actual hour that it took. If Mr. Payne always underestimated the hours listed in his OSHA complaint, then the OSHA hours would always be lower. That is not the case. *Compare* Pl. Ex. 8, Bates no. -165, *with* Def. Ex. 1 (Mr. Payne listed over 24 more overtime hours on the OSHA complaint compared to his timecards). Absent from Mr. Payne's testimony is any explanation for just how wildly inconsistent the two sets of hours are. The Court itself cannot ascertain any way to reconcile these two documents. Based on the inaccuracies across the two documents, the Court finds neither set of hours credible.

The Court is thus left with a difficult situation. Mr. Payne has raised a just and reasonable inference that he worked *some* overtime hours. But Mr. Freeman has presented evidence that Mr. Payne greatly overexaggerated his hours and that his timesheets are not credible. Eighth Circuit precedent provides a path forward through this disputed evidence. Defendants like Mr. Freeman cannot complain that damages "lack the exactness and precision of measurement that would be possible had he kept records" in compliance with the FLSA. *Perez v. Contingent Care, LLC*, 820 F.3d 288, 293 (8th Cir. 2016) (quoting *Marshall v. Van Matre*, 634 F.2d 1115, 1119 (8th Cir. 1980)). Instead, the district court "should not hesitate to award damages based on the 'just and reasonable inference' from the evidence presented." *Id.* (quoting *Martin v. Tony & Susan Alamo Found.*, 952 F.2d 1050, 1052 (8th Cir. 1992)). The Court will thus endeavor to award damages based on the just and reasonable inference of overtime despite Mr. Payne exaggerating his hours.

To calculate damages, the Court must determine the amount of time Mr. Payne worked overtime, his regular rate of his pay, and his overtime rate of pay. These are factual questions. *Id.* (citing *Reich v. Stewart*, 121 F.3d 400, 404 (8th Cir. 1997)). To start, Mr. Payne grossly exaggerated his overtime hours. Mr. Payne's claimed overtime hours were consistently over 30 hours per week. The Court finds the testimony from Mr. Freeman, Mr. Turner, and Mr. Norman more credible as to the number and length of calls that would occur during overtime. Mr. Turner testified he received about one call a weekend, and Mr. Norman testified he received one or two calls a weekend. Mr. Freeman testified when covering for Mr. Payne, he received twelve calls over two weeks including after-hours calls. Putting this all together, the Court finds that Mr. Payne received six to eight calls a week for overtime. To make calculations simple, the Court finds that Mr. Payne had to take seven calls a week. The Court will find these calls were all overtime hours

because Mr. Payne spent the remainder of his normal working hours on his other duties, including scheduled maintenance, inputting invoices related to his after-hour calls, and any e-log training.

Now that the Court has found an average number of calls per week, the Court must decide how long these calls took. Mr. Norman testified that a call can last up to two hours. Mr. Freeman said each call lasts 15 minutes. Mr. Payne described often making several calls over a period of a few hours to resolve one breakdown. Based on this description, the Court finds that each call could be completed on average in 1.5 hours.

To calculate the amount of total overtime hours worked, the Court can multiply the number of calls by the time per call. This amounts to 7 calls times 1.5 hours per call or 10.5 hours per week. In sum, the Court finds that based on the record evidence and credibility determinations as described above, Mr. Payne should be entitled to overtime compensation for 10.5 hours a week. This calculation is the Courts effort to "award damages based on the 'just and reasonable inference' from the evidence presented." *Perez*, 820 F.3d at 293.

As for the rate of overtime compensation, the Court will apply the fluctuating workweek method. *See* C.F.R. § 778.114(a).[3] At trial, there was a dispute over whether the Court should apply the typical overtime rate of one and one-half times Mr. Payne's regular rate or the fluctuating workweek rate of not less than one-half Mr. Payne's regular rate. However, Mr. Payne's counsel conceded that the fluctuating workweek rate applied because that is what Mr. Payne claimed as

---

[3] Because the parties agreed to use the fluctuating workweek method of calculating damages, the Court has agreed to use that method. However, the Court notes this is also likely the correct course of action based on the evidence at trial. *See, e.g.*, *Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1083 (D. Minn. 2015) ("[T]he Eighth Circuit has used the FWW method to calculate the amount of unpaid overtime compensation owed to a plaintiff in a misclassification case such as this.").

his damages throughout discovery and in his pre-trial briefing. *See* Ct.'s Ex. 1. Mr. Payne's counsel further agreed that using the fluctuating workweek rate was proper in the interests of fairness to avoid unfair surprise to Mr. Freeman. *See Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011) ("One of the purposes of discovery is to eliminate unfair surprise.") The Court will therefore use the fluctuating workweek method for determining damages. This will set Mr. Payne's overtime rate at one-half of his regular rate.

The Court has now found Mr. Payne's unpaid overtime hours (10.5 hours per week) and his overtime rate (one-half his regular rate). Calculating damages can be done by multiplying the unpaid overtime hours by the overtime rate. The Court will use parties' figures from Court's Exhibit 1—the damages estimate exchanged during discovery—to calculate the regular and overtime rate. Mr. Payne's pay changed on a weekly basis, so the Court will attach an Appendix to this Opinion and Order that provides these damages calculation on a weekly basis. Two weeks will not have a damages amount because of Mr. Payne's vacation. In sum, Mr. Payne is entitled to $9,574.69 in damages for unpaid overtime compensation.

### C. Liquidated Damages

Mr. Payne also seeks liquidated damages. The FLSA allows a plaintiff to recover liquidated damages in an amount equal to their unpaid overtime compensation. 29 U.S.C. § 216(b). However, a Court can reduce the liquidated damages or award none "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission" was not an FLSA violation. *Id.* § 260. Mr. Freeman argues that he is entitled to this good faith defense. Mr. Freeman's burden is difficult because liquidated damages are the norm and single damages the exception. *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941–42 (8th Cir. 2008).

Mr. Freeman must first show that he honestly intended to follow the FLSA requirements. *Id.* (citing *Hultgren v. Cnty. of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990)). To do that, he must show he took affirmative steps to ascertain the FLSA's requirements but nevertheless violated the act. *Id.* (citing *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991)). Courts have found the subjective good faith requirement met when employers consulted fair labor standards handbooks, studied federal statutes and regulations, or researched industry publications. *See, e.g.*, *Hultgren*, 913 F.2d at 509; *Rivera v. McCory Corp.*, 240 F.Supp. 3d 1150, 1160 (D.N.M. 2017); *Clay v. City of Winona*, 753 F. Supp. 624, 630 (N.D. Miss. 1990). Mr. Freeman testified that he had experience with the difference between employees and independent contractors because of his time working with drivers, including owner-operators of trucks. He also testified that he researched the issue when classifying Mr. Payne, relying on IRS publications about the employee/independent contractor distinction. When Mr. Freeman classified Mr. Payne as exempt from the FLSA because of his independent contractor status, he did so with the subjective, good-faith belief that he was complying with the FLSA.

Mr. Freeman's position was also objectively reasonable. "The reasonableness requirement imposes an objective standard by which to judge the employer's conduct. Ignorance alone will not exonerate the employer. . . ." *Barbeque Ventures, LLC*, 547 F.3d at 942 (8th Cir. 2008) (quoting *Cooper Elec. Supply Co.*, 940 F.2d at 907–08). As discussed above, Mr. Freeman researched the IRS guidelines when deciding how to classify Mr. Payne. Mr. Freeman also had prior experience with the difference between employees and independent contractors, and he based the classification in part on that experience. Just as Mr. Freeman did not willfully violate the FLSA, his decision was objectively reasonable. Moreover, Mr. Payne expressed a wish to be an independent contractor so he could receive certain tax benefits. The Court discussed above that

18

one economic realities factor weighed in favor of concluding Mr. Payne was an independent contractor and others were close calls before concluding that Mr. Payne is properly classified as an employee. Together, this all shows that Mr. Freeman's position, although incorrect, was objectively reasonable.

Mr. Freeman has shown both his subjective good-faith attempt to follow the FLSA and that his good-faith attempt was objectively reasonable. Mr. Freeman has satisfied all that is required for the Court to reduce or award no liquidated damages. Therefore, the Court, using its discretion, will not award liquidated damages.

### III. Conclusion

IT IS THEREFORE ORDERED that Plaintiff Mark Payne shall have and recover from Defendant Christopher Freeman $9,574.69 in damages on his FLSA claim for unpaid overtime.

IT IS FURTHER ORDERED that there is no just reason for delay in entering final judgment as to Mr. Freeman because it is the ultimate disposition of an individual claim. *See* Fed. R. Civ. P. 54(b); *Downing v. Riceland Foods, Inc.*, 810 F.3d 580, 585 (8th Cir. 2016).[4]

IT IS FURTHER ORDERED that Mr. Payne can seek his attorney's fees and costs under the Federal Rules of Civil Procedure and this Court's Local Rules.

IT IS SO ORDERED on this 9th day of February, 2024.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE

---

[4] As a reminder, this trial did not adjudicate all claims and parties because the action is stayed as to separate defendant Freeman Transit, LLC due to the automatic bankruptcy stay. (Doc. 36). It is unclear when that bankruptcy case will be resolved, so the Court sees no reason for delay.